25 P.(2d) 802

### GONZALES et al. v. RIVERA et al.

### No. 3734.

Supreme Court of New Mexico.

April 17, 1933.

On Rehearing Sept. 26, 1933.

H. O. Waggoner, of Albuquerque and J. O. Seth, of Santa Fe, for appellants.

Marron & Wood, of Albuquerque, for appellees.

WATSON, Chief Justice.

This suit results from Gonzales et al. v. Reynolds et al., 34 N. M. 35, 275 P. 922, to which reference may be had as to important facts. The appellants in that cause obtained from this court a supersedeas, staying the operation of the injunction granted by the district court. The effect of the supersedeas was to permit those appellants to continue in business in competition with the then appellees, pending the appeal. To obtain it they were required to give and did give a $5,000 bond conditioned to "pay all damages and costs suffered or sustained * * * by reason of the suspension, stay and supersedeas of the said injunctive order. * * * " The injunction having been sustained by this court, the present suit was instituted to re-cover on the bond. This appeal is from a judgment in the full amount of the bond.

The trial judge, upon findings, concluded, as matter of law, "that the loss to the plaintiffs, occasioned by the suspension of the injunctive order, and the continued operation of the general mercantile business by the defendants during such suspension, exceeded the penalty of the bond."

This conclusion is challenged generally as unsupported by the evidence and findings, and particularly because of a finding, made at appellants' request, as follows: "That soon after said bond was made, to-wit; on the 20th day of September, 1928, one, Henry Pick, opened and operated a general merchandise store, within one hundred yards of most of the homes of the customers of the Plaintiffs herein, and that said Henry Pick at all times carried a stock of merchandise of not less than ten thousand dollars, and that the Chili Red Store of Plaintiffs at no time carried a stock of over five thousand dollars, and that Henry Pick operated during the entire term of the bond herein sued upon and did a substantial volume of business."

It is to be borne in mind that, so far as this suit is concerned, appellants are not liable for the loss of profits sustained by appellees by reason of their unlawful competition. They are chargeable only with so much of that loss as accrued during and by reason of the operation of the supersedeas.

In the findings and briefs there is great confusion as to important dates. We accept these: Appellants engaged in business, in un-

lawful competition with appellees, on May 15, 1928. The bond in suit took effect as a supersedeas September 19, 1928. Appellees sold their business February 25, 1929, and evidence of damages does not extend beyond that date.

It is the position of appellants that there is no basis on which there can be any severance or segregation of the lost profits for the period in question; some being naturally occasioned by the competition of appellants and some by that of Pick; and that, accordingly, because of uncertainty of the proofs, nominal damages only are recoverable.

After making and refusing findings for each of the parties, the court found of its own motion: "The court finds that it is difficult, if not impossible, to ascertain the accurate and exact amount of net profits for any period from the bookkeeping system in use by the Chili Red Store. The Court, however, is able to ascertain the amount of gross sales during the period pertinent to this inquiry, and, in fact, these amounts seem to be agreed upon by the parties and are shown by the requested findings of the defendant. Taking these gross sales and applying a far less percentage of profit than the percentages testified to by experts in the case, the result would show that profits would ordinarily have been earned during the six months period in which the injunction was superseded in an amount in excess of the penalty of the bond."

This discloses, in a general way, that the court based its conclusion on the evidence of gross sales, adduced for fourteen months, January, 1928, to February, 1929, inclusive; and that he assumed a percentage of profit, "far less * * * than the percentages testified to by experts in the case." The evidence most favorable to appellees was that gross profits were 37 per cent. prior to competition; immediately falling to 22 per cent. when appellants commenced business.

The evidence covers three periods: (1) The normal or precompetition period; (2) the period of competition for which damages are not here recoverable; (3) the period following the taking effect of the bond in suit. We insert here the figures in evidence, with certain calculations of our own.

First Period.

| Sales | Jan. | 1928 | $ 4,988.34 | | |
|---|---|---|---|---|---|
| " | Feb. | " | 4,603.93 | | |
| " | Mar. | " | 5,581.23 | | |
| " | Apr. | " | 5,651.11 | | |
| " | ½May | " | 2,786.65 | Average month- | |
| Total | | | $23,611.26 | ly sales | $5,246.00 |

Second Period.

| Sales | ½May | 1928 | $ 2,786.65 | | |
|---|---|---|---|---|---|
| " | June | " | 4,276.92 | | |
| " | July | " | 2,919.76 | Average month- | |
| " | Aug. | " | 3,154.85 | ly sales | $3,646.00 |
| " | ⅔Sept. | " | 2,051.35 | Average month- | |
| Total | | | $15,189.53 | ly decrease | 1,600.00 |

Third Period.

| Sales | ⅓Sept. | 1928 | $ 1,025.65 | Average month- | |
|---|---|---|---|---|---|
| " | Oct. | " | 3,098.14 | ly sales | $2,439.00 |
| " | Nov. | " | 2,491.12 | Average month- | |
| " | Dec. | " | 2,760.27 | ly decrease | |
| " | Jan. | 1929 | 2,247.78 | from first pe- | |
| " | Feb. | " | 1,332.84 | riod | 2,807.00 |
| Total | | | $12,955.80 | Average month- | |
| | | | | ly decrease | |
| | | | | from second | |
| | | | | period | 1,207.00 |

Appellees' losses during the second period might be estimated thus:

37% of $1600 lost sales for 4⅙ months......... $2,463.00
15% loss on $15,189.53 sales made.............. 2,279.00
                                               ————————
                                                 $4,742.00

But such losses are not recoverable in this suit.

Appellees' losses during the third period might be estimated thus:

37% of $2,807.00 for 5¼ months............... $5,539.00
15% loss on $12,955.80, sales made............ 1,944.00
                                             ————————
                                               $7,483.00

This would sustain the conclusion of the trial court and approximate appellees' claims. But, it is a practical certainty that the Pick competition is to some extent responsible for these losses.

■■ We cannot sustain the contention that this renders the loss of profits chargeable to appellants so uncertain as to limit appellees' recovery to nominal damages. In the first place, we deem this such a case of wrongdoing that sound policy requires that the risk of estimating the damages too high or too low should be thrown upon appellants. Allison v. Chandler, 11 Mich. 542, quoted with approval in State Trust & Savings Bank v. Hermosa L. & C. Co., 30 N. M. 566, 240 P. 469. In the second place, we think that the data before us, with proper inferences, will permit an approximate severance of these losses and a determination of the recoverable damages.

If 4½ months are a sufficient criterion of appellees' precompetition sales and profits, 4⅙ months should be a sufficient criterion of the effect of appellants' competition. We assume that in that time it had spent its force and that the situation had become stabilized. Therefore we allocate the subnormal sales of $2,807 monthly, during the third period, thus: $1,600, as due to appellants' competition, and $1,207, as due to Pick's competition. For the 5⅙ months the loss in sales chargeable to appellants' competition is accordingly $8,533.

The questions now arise whether the loss in gross profits should be considered 37 per cent. or 22 per cent. of this sum, and whether appellees should also recover for the decrease of 15 per cent. in the gross profits of the merchandise they actually sold.

It is impossible to infer that if appellants had not superseded the injunction, appellees' business would have gone back to normal. Any recovery must be upon an assumption that some business would have been regained. We infer, as favorably as possible to appellees, that they would have regained the business lost to appellants; monthly sales of $1,600. We cannot so infer with respect to the business lost to Pick. This justifies the segregation made. But Pick's appearance on the scene apparently had no effect on the level of retail prices. The drop in gross profits from 37 per cent. to 22 per cent. was the immediate effect of competition upon a business theretofore sole occupant of the field. The same logic that attributes this fall in retail prices originally to appellants' competition, requires the inference that Pick's competition

would have kept them down, even if the earlier competition had ceased. It at least rebuts any inference that the former, or any higher, level could have been restored upon the taking effect of the injunction.

■ So we conclude that the loss in gross profits recoverable under the evidence in this case, is $1,877.26; 22 per cent. of $8,533. Of course, the real measure of damages is loss of net profits. In this particular case, however, it would seem that these gross profits, if gained, would have been subject to no substantial deductions, and would have constituted net profits.

Appellees contend that the appearance of Pick as a competitor should have no effect upon the court's conclusion or judgment. Their position is thus stated: "The plaintiff is required to demonstrate with considerable accuracy that there was a going business established and making a profit for a reasonable time before the injury. That being established there is almost a legal presumption under the authorities that those profits would have continued had it not been for the defendants' interference and the courts quite generally put upon the wrong doer the burden of showing that other elements than his wrong contributed to the loss; and also put the burden on him of establishing how much loss was sustained due to those other causes. Wrong doers are not to be encouraged or favored by putting burdens on the injured party which they themselves can just as well sustain."

We have examined all authorities cited by appellees. As we expect to lay down no definite rule of law in this case, it is unnecessary to review them. We may accept them in principle. We shall not question the soundness of the proposition nearest in point, found in Chapman v. Kirby, 49 Ill. 211, where the court said: "And to measure such damages, the jury must have some basis for an estimate, and what more reasonable than to take the profits for a reasonable period next preceding the time when the injury was inflicted, leaving the other party to show, that by depression in trade, or other causes, they would have been less?" We here hold nothing contrary to Di Palma v. Weinman, 16 N. M. 302, 121 P. 38, on which appellees rely. If this were an ordinary case, for instance a suit to recover from appellants for loss of profits during the second period, the principles invoked by appellees would apply. Indeed, we apply them here.

But this is not an ordinary case. Eminent counsel have cited no precedent. We have not ourselves made search. It is a practical certainty that the entire loss of business suffered by appellees during the period in question is not attributable to the act for which appellants are here to be held liable. Reasonable inferences enable us to segregate the losses. Appellees claim for themselves, and rightly, considerable liberality of inference. Yet at the same time they urge the utmost strictness for appellants. The necessity of the case excuses appellees from proving that a particular customer, or a particular sale of

merchandise, was diverted from them to appellants. What is impossible or impracticable to them in the way of proof, is equally so to appellants. We agree that the tribunal charged with estimating so uncertain a thing as loss of profits, should be careful not to err against the innocent and wronged party. But, after all, compensation, not punishment, is the end sought.

The act of superseding the injunction, upon which alone liability and recovery must be predicated, if deemed a wrong, is not to be punished by making such distinction in the principles of proof of damages as appellees insist upon. Whatever burden of proof may have rested upon appellants, we deem to have been met in the same manner as appellees have met the burden resting upon them.

Another question is presented. When appellees were alone in the field, the mine owners "required their workmen to pay the plaintiffs (appellees) out of their wages any bills due the plaintiffs from said workmen." When appellants opened their establishment, this assistance was withdrawn. The trial court found these facts, and also that there was a resulting loss to appellees in excess of $2,000. From the finding made of the court's own motion, it may be doubted if this was taken into account in the conclusion above quoted. Appellees contend that it was not.

Assuming that this might be a proper element of damage in some cases, there can be no recovery for it here. The reasoning already employed precludes it. Assistance in collecting was withdrawn because too trouble-some when more than one concern demanded it. Pick's entry into the field prevents any inference that the assistance would have been again available if the injunction had not been superseded.

We think, therefore, that neither the evidence nor the findings supports the conclusion here complained of. It follows that the judgment cannot be sustained as it stands. We think that evidence and findings do warrant judgment for the amount above arrived at. The present judgment will be reversed and the cause remanded with a direction to enter judgment for appellees in the sum of $1,877.26. It is so ordered.

SADLER, HUDSPETH, BICKLEY, and ZINN, JJ., concur.

## On Rehearing.

WATSON, Chief Justice.

The original judgment carried interest at 6 per cent. from May 6, 1929, when the action was commenced. This escaped our notice. It was not objected to and it was not our intent to effect any change in that respect.

We have become convinced of error in the reasoning on which we disposed of the trial court's finding that appellees had suffered $2,000 damages due to the withdrawal of the assistance of the mine owners in collecting miners' accounts. There is no evidence that Pick ever sought such assistance, or that his entering the field would have prevented a restoration of the situation if

the supersedeas had not operated to continue the unlawful competition.

The contention here made was that there was no substantial evidence to support this finding. It is very meager. According to the showing, in May, when the assistance of the mine owners was withdrawn, there was an accumulation of bad accounts amounting to "nŏt to exceed twelve hundred, one thousand to twelve hundred dollars." When appellees went out of business it had grown to "at least $4500." That is all.

It is apparent that the finding represents a mere estimate. We think it too high. Assuming that from May on appellees sold $3,-500 of merchandise, for which they could collect nothing, the monthly average would be $368, amounting to $1,963 for the five and one-third months here involved. The evidence would suggest, however, that some of these bad accounts would have been created in the usual course of the business with the advantage formerly enjoyed.

It is the theory of appellees that damages in this class of cases are so much at large that the estimate of the trial court is practically controlling. The rule as to lost profits is necessarily liberal, as already stated. Still, we do not consider the damages as being at large, as if for pain and suffering. There must be a showing of actual loss. The liberality comes from necessity, to avoid the greater evil of leaving the injured party remediless against wrongdoing.

But it does not seem to us that the same rule is applicable to this item of claimed damage. Showing in detail sales made and actually entered upon the books, resulting in bad credits, is quite a different matter from showing sales not made but which might have been made but for the act of the wrongdoer. We greatly doubt, therefore, if the evidence should be deemed sufficient to support the court's estimate or any estimate on this account.

The point which really gives us the greatest concern is that our decision is a departure from the well-established practice of reviewing only for error of law, properly pointed out in the trial court and presented here; that we have really given to appellants and imposed upon appellees a trial de novo.

It is true that the contention on the part of appellants, both below and here, was not that the damages were excessive, but that the evidence warranted no damages. It was contended that the loss of profits for the period in question was shown to be due to two causes, for one of which—Pick's competition—appellants were not responsible; and that the proofs were therefore so uncertain that no more than nominal damages could be recovered.

However, in pursuing this point, there was disclosed what seemed to us an excessive award. As we viewed the matter, both counsel had claimed too much. The theory of appellees that the Pick competition was immaterial and should be disregarded, was as erroneous as the theory of appellants that it was fatal to any substantial recovery.

Ordinarily this court is content to examine the points here relied upon for reversal,

if properly preserved at the trial, sustaining or overruling them. That is all appellants are entitled to as of right. But that does not limit the inherent power of this court to prevent fundamental injustice. Being convinced that the judgment was largely excessive, due to a failure to give any consideration to found facts which were material, deeming the case unusual, and an end of litigation desirable, to that end yielding something of form to substantial justice, without intending to relax the well-established principles of review, but rather making a virtue of necessity, we disposed of the case as we did.

While still unwilling to affirm the present judgment, we have concluded to make different disposition of the appeal. A more accurate award of damages will no doubt result, and we shall better conform to established practice, by restoring the case to the jurisdiction of the trial court as it stood at the close of the evidence. It will then be within his judicial discretion to make up new findings upon the present record or to reopen the case or grant a new trial, as justice may seem to require. State ex rel. Bujac v. District Court, 28 N. M. 28, 205 P. 716, Ortega v. Ortega (rehearing), 33 N. M. 605, 273 P. 925.

The judgment will be reversed, and the cause remanded with direction to vacate the judgment and findings, and to proceed in accordance herewith. It is so ordered.

SADLER, HUDSPETH, BICKLEY, and ZINN, JJ., concur.