(No. 23150.—
THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* SAM PERS *et al.* Plaintiffs in Error.

*Opinion filed December 16, 1935.*

CHARLES A. BELLOWS, for plaintiffs in error.

OTTO KERNER, Attorney General, THOMAS J. COURTNEY, State's Attorney, and A. B. DENNIS, (EDWARD E. WILSON, RICHARD H. DEVINE, and JOHN T. GALLAGHER, of counsel,) for the People.

Mr. JUSTICE WILSON delivered the opinion of the court:

This is a writ of error to the criminal court of Cook county to review the judgment of that court entered on the verdict of a jury finding the plaintiffs in error, Sam Pers and Louis Carzoli, (hereinafter referred to as the defendants,) guilty of the crime of burglary. The indictment consisted of three counts. The first and second counts charged the defendants and Herman Lenobel with committing the crime of burglary of a store owned by A. Pawlan, on March 7, 1935. The third count charged the same persons with receiving stolen property, the proceeds of the burglary. At the conclusion of the trial the People dismissed the third count as to all defendants. The defendant Lenobel has not joined in this writ of error.

The evidence shows that A. Pawlan conducted a dry goods store at 4041 Milwaukee avenue, in the city of Chicago. The business consisted largely, if not wholly, in the sale of women's cotton dresses. On March 6, 1935, there were in stock over 900 dresses in the store. The following morning, at about 8:55 o'clock, a carpenter discovered that the rear of the store had been broken open while the front door was locked, and that merchandise was missing and coat hangers were on the floor. He at once notified the proprietor of the store. Further investigation disclosed that bars in rear windows had been spread, a bar had been lifted from the inside of a rear door and locks broken. Seven hundred eighty-eight dresses had been removed from the store and 102 remained.

Police officers on what is termed "the cartage detail," covering stolen merchandise and trucks, on the night of March 8, 1935, at about 7:35 o'clock, saw a commercial truck going north on Hoyne avenue, between Harrison and Congress streets, and an automobile containing two men was proceeding slowly alongside the truck toward Congress street. The officers were in two automobiles. One of the automobiles was driven in front of the truck

and caused it to stop. Carzoli alighted from it and the officers arrested him. The other officers followed the automobile accompanying the truck, and, when overtaken, the occupants, Pers and Lenobel, were ordered to stop, which they did, and they were placed under arrest. The truck contained bags in which there were 604 dresses. A number of these were later identified as part of the stock the property of Pawlan. As shown by automobile identification cards, the truck was owned by Lenobel and the accompanying automobile by Carzoli.

A police officer testified that he was present at the detective bureau, with other officers, when one of them questioned the defendants. Pers said that he had obtained the dresses from a man by the name of Chester to sell, and that he (Pers) and Lenobel were protecting the merchandise from being "hi-jacked." The officer testified that although a search was made for Chester where Pers said he could be located, no one by that name was found.

Each defendant testified in his own behalf. Each said that on March 6, 1935, he was at home, Pers from 6:00 o'clock and Carzoli from 6:30 o'clock until he retired, and each testified that he remained in bed all night, and each denied participating in the burglary. The only other testimony for the defendants was that of a sister of Pers, who stated that she and her children went to the home of Pers' mother on March 6, 1935, at about 4:00 o'clock; that Pers came home about 6:00 or 6:15 o'clock; that the night was stormy and Pers gave up his bed to her, and he retired about 11:30 o'clock to a couch and was still asleep when she arose the following morning.

The errors assigned are: (1) That the trial court erred in refusing to permit counsel for the defendants the opportunity to reasonably interrogate the jurors on their *voir dire* examination and in denying Carzoli twenty peremptory challenges; (2) that the court erred in depriving the defendants of the right to consult with their counsel;

(3) that the court unduly limited the cross-examination of counsel for the defendants on material matters; (4) that incompetent evidence was admitted; (5) that the trial court made prejudicial remarks during the course of the trial and commented on the evidence in the presence of the jury; (6) that the trial court erred in refusing to accept suggested modifications of the charge to the jury and erred in instructing the jury; (7) that the trial court erred in making and overruling the motions for a new trial and in arrest of judgment of its own motion, without permitting counsel for the defendants to state the grounds for each of the motions; and (8) that the evidence is insufficient to sustain a conviction.

With respect to the first error assigned, the record shows that when the selection of the jury had consumed an hour and fifteen minutes the trial court announced that the attorneys would be limited in their further examination to questions to ascertain the names, occupations and the qualifications of the prospective jurors as to whether they understood the law, would follow the evidence and give the defendants the presumption of innocence until proven guilty. Counsel for the defendants were not permitted to inquire about the service of the prospective jurors in the trial of previous cases in which they had acted as jurors. Exceptions were preserved to the ruling prohibiting answers to these and similar questions. The examination of the jurors constitutes 121 pages of the bill of exceptions. A defendant's counsel has the right to examine prospective jurors to ascertain their occupations, habits and associations and to make reasonable and pertinent inquiries to ascertain whether their minds are free from bias. (*People* v. *DeLordo,* 350 Ill. 148; *People* v. *Redola,* 300 id. 392.) We have read the questions and answers in the examination of all of the jurors and have considered the possible effect of the limitations imposed by the court. There is nothing to show that the defendants' counsel was prevented from disclosing any

facts or reason why a prospective juror might be biased or lack the essential qualifications for service as a juror in the case.

After the defendants' counsel had exercised ten peremptory challenges of jurors on behalf of Carzoli and sought to challenge peremptorily the eleventh juror, the court, upon objection, denied the defendants' attorney the right to exercise the challenge. It was argued that because the crime charged was one for which the sentence might be one year or for life each defendant was entitled to twenty peremptory challenges, as provided by statute. We have held that a sentence under the Sentence and Parole act is for the maximum term provided for the crime charged and that the provision for a prisoner's release prior to the maximum period does not affect his sentence. (*People* v. *Mikula,* 357 Ill. 481.) When the act with respect to peremptory challenges was passed the Indeterminate Sentence act was not in existence, but there were no crimes for which the punishment was exclusively death or life imprisonment, with no minimum for a term of years less than life, and there are no such punishments now prescribed, although the punishment for the crime of which the defendants were convicted has been increased to a maximum penalty of life imprisonment. If the maximum term is for life there is no reason apparent to us why the statute providing for twenty peremptory challenges is not applicable. The court erred in its ruling.

At a point in the examination of jurors when there were three in the last panel the court asked if counsel was satisfied with them. One was excused, and the court then asked defendants' counsel if he was satisfied with the two remaining in the panel and required him to state. Defendant's counsel then contended that the panel should be full before he was required to proceed, and that he was not required to tender two jurors. There were two counsel for the defense—one attorney representing Lenobel and another

representing the plaintiffs in error. Apparently there had been some discussion as to the method of examining the jurors, but the defendants' counsel was not satisfied to tender less than a panel of four jurors. Section 21 of the Jurors act provides that upon the impaneling of any jury in any civil cause "in any court in this State, it shall be the duty of the court, upon request of either party to the suit, or upon its own motion, to order the full number of twelve jurors into the jury box, before either party shall be required to examine any of the said jurors touching their qualifications to try any such causes: *Provided,* that the jury shall be passed upon and accepted in panels of four by the parties, commencing with the plaintiff." Section 23 of the same act makes the act apply to both civil and criminal cases. (Ill. State Bar Stat. 1935, p. 1968; Smith's Stat. 1935, p. 1949.) The right conferred by the statute was one to which counsel for the defendants was entitled in this case.

Before the evidence for the defense was presented the defendants' counsel requested five minutes' time to talk with his client, claiming that previously he did not have the opportunity to do so, and later made the same request with respect to certain prospective witnesses to determine whether he would use them. The court refused each request. The circumstances are not shown which prevented the defendants' counsel from previously talking with his clients and witnesses, except as it might be inferred from his statement that he had not received attorney's fees and for that reason had delayed the consultation. It is apparent from the record that the court thought that counsel for the respective defendants was impeding the trial of the case by making unnecessary requests and motions. It is unnecessary to decide whether error was committed in this respect, for upon another trial, which is necessary for other errors, counsel will doubtless have ample time to confer with his clients and witnesses.

It appeared from the testimony that the owner of the store burglarized had three other stores in which the same kind of merchandise having the same tags could be found. The defendants' counsel sought on cross-examination to elicit from the prosecution's witness, the manager of the store, that she could not identify exhibits offered upon the trial as being the articles taken in the burglary. The court sought to confine the testimony to what was ascertained with respect to the store burglarized, prohibiting questions as to the merchandise contained in the other stores. The same witness had previously identified the dresses shown her as coming from the store which was burglarized. Counsel for the defendants showed the same witness one of the dresses marked as a People's exhibit and asked her if she knew how many dresses of that pattern, color and style were in the store on March 6, 1935. An objection was interposed, and the court inquired if counsel desired to examine the witness upon the entire list of dresses, and when the attorney replied in the affirmative the court stated that court would be adjourned until the following morning to give counsel time to check up, if that was what he wished to know, and stated the court was not opposed to taking time if counsel wished to group them and ask the witness— (The sentence was not completed.) Counsel objected to the ruling. It is insisted that the cross-examination was important to establish the fact that there were no peculiar numbers or marks distinguishing the dresses exhibited from those in the other stores of her employer. It does not appear that this line of cross-examination was continued.

Other questions with respect to remarks interjected by the court during the trial are raised, but we do not find it necessary to pass upon them.

It is contended that the nine dresses admitted in evidence were not shown to have been in the store when it was burglarized, in view of the fact that Pawlan owned

other stores in which were dresses similar to those admitted as exhibits in the case and identified by the manager of the burglarized store as part of the property of that store. It is insisted this was error. The identification was positive and sufficient.

Counsel for the defendants suggested certain changes in the charge to the jury upon the subject of the presumption of innocence, the burden of proof, and the presumption arising from the exclusive possession of stolen property shortly thereafter, and it is contended that it was error not to modify the instructions as requested. The jury was fully and properly instructed upon these subjects by the instructions as given.

When the verdict was entered the court directed that it be filed and that the two defendants be taken into custody. The attorney for the defendants then said that he had certain motions to make. The court then said: "Motion for new trial overruled as to each defendant. Motion in arrest of judgment overruled as to each defendant." Counsel for the defendants then said: "I want the record to show your honor is not permitting counsel to make a motion for a new trial in writing and also stating the grounds for the motion. The jury came out at 4:00 o'clock, and counsel is asking that the three defendants be permitted to make motions for a new trial and arrest of judgment, and your honor is overruling it without giving me an opportunity to set out the grounds." The court then entered judgment on the verdict. Afterward motions for a new trial and in arrest of judgment were made in writing and filed in the office of the clerk of the criminal court. The practice of overruling a motion for new trial and in arrest of judgment without hearing what reasons will be presented is not approved by this court. (*Neathery* v. *People*, 227 Ill. 110.) Whether the denial of such a motion is reversible error will depend upon the facts in the given case. *People* v. *Marx*, 291 Ill. 40; *People* v. *Moretti*, 330 id. 422.

Because of the error of the trial court in limiting the defendants' counsel to ten peremptory challenges, contrary to the statute, it becomes necessary to reverse the judgment, and it therefore follows that it will not be necessary to consider the merits of the case.

For the reasons stated herein the judgment of the criminal court is reversed and the cause is remanded for a new trial.

*Reversed and remanded.*