(No. 29472.—

The People of the State of Illinois, Defendant in Error, *vs.* John N. Shines, Plaintiff in Error.

*Opinion filed September 18, 1946.*

W. G. Anderson, of Chicago, for plaintiff in error.

George F. Barrett, Attorney General, and William J. Tuohy, State's Attorney, of Chicago, (Edward E. Wilson, John T. Gallagher, and Melvin S. Rembe, all of Chicago, of counsel,) for the People.

Mr. Justice Wilson delivered the opinion of the court:

The defendant, John N. Shines, was indicted in the criminal court of Cook county for the crime of assault with intent to murder Charles Avramovich. Defendant pleaded not guilty, and waived a trial by jury. The court found him guilty, and sentenced him to imprisonment in the penitentiary for a term of not less than five nor more than eight years. Shines prosecutes this writ of error.

Charles Avramovich, on February 2 and 3, 1945, operated a hamburger or "hot dog" stand on the northeast corner at the intersection of Maxwell and Newberry streets, in Chicago. From his testimony it appears that on the evening of Friday, February 2, defendant, accompanied by two women, appeared at the hamburger stand and ordered three sandwiches, but, when asked to pay fifty-five cents for them, defendant refused; that the women paid twenty cents for their refreshments and went away; that defendant remained about ten minutes; that, when again asked to pay, he cursed Avramovich, started breaking dishes, and proclaimed his intention of returning and killing him. Upon defendant's departure, Avramovich repaired to a nearby police station and, according to him, the police visited his place of business three times during the evening. Avramovich testified that the next day, February 3, about 6:30 P.M., defendant returned, alone, immediately drew his revolver, fired two shots from a distance of ten to twelve feet, and ran away. One bullet pierced Avramovich's right armpit and the second lodged in his clothes. He again went to the police station and, from there, was taken to the county hospital where he remained eight days. Avramovich stated that he did not touch defendant on the evening of February 2 and, further, that he did not carry a pistol on either February 2 or 3. Both Avramovich and Spiro Trajcevich, his assistant, had ample opportunity to observe defendant. The former had seen him several times previously, gave a description of defendant to police officer Edward Henning, who arrested him, and identified him at a review of persons under arrest held at the Maxwell police station on February 24, 1945.

Defendant admitted his presence at Avramovich's "hot dog" stand on both February 2 and 3. He testified that Avramovich sought to overcharge him for the sandwiches ordered on February 2; that when he protested Avramovich cursed him and, to the epithets, he replied in kind;

that, at the suggestion of his women companions he placed thirty-five cents on the counter and that, at this moment, Avramovich struck him with a section of iron pipe whereupon "everything went black." Defendant declared that he was unarmed and, upon regaining consciousness, found himself on his hands and knees, crawling. Referring to the evening of Saturday, February 3, defendant testified that Walter Hudson, an acquaintance, insisted upon accompanying him to the hamburger stand, and that, upon arrival, Hudson shot the proprietor but that he did not believe Hudson shot Avramovich merely to please him since he was "not that close a friend." Defendant gave this version of the occurrences of February 2 and 3 to police office George E. Miller. The latter unsuccessfully attempted to locate Hudson at his place of employment. Defendant admittedly did not tell anyone Hudson did the shooting prior to his own apprehension, and he testified that he had not seen Hudson since the latter shot Avramovich. We are constrained to observe that we agree with defendant's statement in his brief to the effect he told "a somewhat unusual story." The quotation, to put it mildly, is an understatement. For a markedly similar defense, see *People* v. *Moore*, 362 Ill. 102.

Three witnesses supported defendant. Of these, Ruth Ingram first testified that she saw Hudson and defendant at the hamburger stand on the evening of February 3 and that, although she heard a shot, did not see who fired it, but did observe Hudson running and putting something in his pocket. Later, on both cross and redirect examination, this witness admitted that her previous testimony was false and, in particular, that she was not present at the scene of the shooting. Ernest Marsh, a friend, testified that, as he approached the stand, Hudson fired a shot at Avramovich, bumped into him, the witness, and started to run. Elisha Vann, an acquaintance, testified to being present at the stand when Avramovich was shot, asserted that he did

not see defendant the night of the shooting, and professed his inability to recognize the man who shot Avramovich if he should see him again.

To obtain a reversal, defendant urges, first, that the trial court erred, as a matter of law, in not allowing him ten days after the entry of judgment in which to file a written motion for a new trial. Section 17 of division XIII of the Criminal Code (Ill. Rev. Stat. 1945, chap. 38, par. 747,) provides that all motions for new trial must be in writing. The record discloses that a finding of guilty was made by the trial judge on May 3, 1945. Defendant did not then, or thereafter, request time within which to file a written motion for a new trial. He did, however, on May 3, make a motion to be admitted to probation. Disposition of his motion was continued until May 15 when the motion was denied. Upon the denial of the motion for probation, defendant next made an oral motion for a new trial, the record disclosing only the following statement by his attorney, "Judge, I make a motion for a new trial." The motion was summarily overruled. He did not, on May 15, present or ask leave for permission to file a written motion for a new trial. Whether the denial of a motion for a new trial constitutes reversible error is dependent upon the facts in the particular case. (*People* v. *Pers,* 362 Ill. 298.) Here, the cause was tried by the court without a jury and the evidence narrated, although conflicting, amply supported the finding of guilty. Its sufficiency to convict has been assigned as error, but the error has been waived by defendant's failure to argue the contention made. In any event, where a cause is tried by the court without a jury, a motion for a new trial is unnecessary to preserve for review questions relative to the sufficiency of the evidence. (*People* v. *Tobin,* 369 Ill. 73.) Defendant makes no showing of prejudice resulting from the adverse ruling, and we cannot say, in the absence of either a request to file a written motion or an objection to the action of the court

in overruling the oral motion, that the trial judge abused his wide judicial discretion in denying the oral motion for a new trial, or that the denial was prejudicial to defendant. *People* v. *Hoffman*, 381 Ill. 460.

Complaint is next made with respect to the scope of the cross-examination of defendant. The argument is advanced that the purpose of the cross-examination was to impeach him on immaterial matters. Counsel says, "While almost everything inquired into in this cross-examination was immaterial and did the defendant no good—even if it actually did him no harm—practically all of it was immaterial and should have been objected to." Apart from the fact that no objection was interposed by defendant's counsel to any of the questions propounded, the matter of cross-examination of witnesses in a trial before a court without a jury is one which must necessarily be entrusted largely to the discretion of the presiding judge. (*People* v. *Sain*, 384 Ill. 394.) Again, great latitude is allowed in the cross-examination of a witness, as it is one of the most efficacious means yet devised for ascertaining the truth. (*People* v. *Barad*, 362 Ill. 584.) Our examination of the entire cross-examination of defendant discloses no abuse of judicial discretion. Defendant also insists that interrogation of two police officers represented an endeavor to impeach him on an immaterial matter, namely, the time he stated to the officers he had been engaged in a crap game with Hudson. The purpose of the question related directly to the material issue as to whether defendant or Hudson shot Avramovich. Defendant interposed the defense that Hudson, and not he, assaulted the prosecuting witness, and testified that he had not seen Hudson afterwards. Police officer Edward Henning, in rebuttal, testified that defendant, in March, 1945, told him he had engaged in a crap game with Hudson after his arrest and release on bond. Defendant denied the statement attributed to him. Officer Miller corroborated Henning. The two officers also testified that they asked de-

fendant to explain his failure to notify the police of Hudson's whereabouts. Under the circumstances, we find no impropriety in questions obviously seeking to elicit information as to why defendant did not cause Hudson to be arrested if he had located him subsequent to the day the crime was committed.

The contention that the Indeterminate Sentence Law, by reason of its administration, is unconstitutional, being supported merely by a general statement to the same effect, is deemed waived.

The judgment of the criminal court of Cook county is affirmed.

*Judgment affirmed.*