265 P.2d 684

STATE v. SANCHEZ.

No. 5675.

Supreme Court of New Mexico.

Jan. 12, 1954.

Edward J. Apodaca, J. A. Smith, Albuquerque, for appellant.

Richard H. Robinson, Atty. Gen., Fred M. Standley, W. R. Kegel, Asst. Attys. Gen., for appellee.

SEYMOUR, Justice.

October 15, 1952 verdict of the jury was returned in Bernalillo County District Court finding the defendant Carlos Sanchez guilty of murder in the first degree and specifying life imprisonment in lieu of death. Appeal is prosecuted from the verdict, and from judgment and sentence entered thereon.

Principal points relied upon for reversal are four in number:

"*Point I.* Appellant was entitled to but was denied a continuance of his trial upon the ground that appellant, being a poor and pauper person without means with which to employ counsel, was entitled to well-prepared presentation of his cause and adequate and sufficient time within which Court-appointed counsel could present and prepare for presentation of appellant's cause. Appellant was further entitled to a continuance because of Court's abuse of discretion in reversing itself in placing trial of appellant's cause at earlier date than stipulated to Court-appointed counsel."

"*Point II.* Appellant was entitled to but was denied his right to disqualify any presiding judge whom he believed would be prejudiced against appellant, whether said prejudice was by way of personal animosity, by way of known predisposition towards defendants with previous criminal records, whether justification existed one way or another for that belief, or whether appellant was sincerely of subjective opinion that he would not receive a fair trial before assigned presiding judge."

"*Point III.* Appellant was entitled to but was denied his constitutional and statutory rights of due process of law in that being a poor and pauper person and without means with which to retain counsel and thus being solely reliant for protection upon the wise, equitable and benevolent discretion of the Court in the preparation of his case, he was not provided with assistance of counsel in that trial counsel was not appointed until beginning day of term of Court and thus did not have adequate time for preparation of appellant's case."

"*Point IV.* Appellant was entitled to but was denied twelve (12) peremptory challenges to the jury panel in his trial for the crime of commission of Murder in the First Degree."

Information charging murder was filed May 12, 1952; on May 28, the court appointed two members of the bar to represent defendant; on June 25, these two attorneys were relieved of their appointment and another member of the bar was appointed in their stead; in July, preliminary hearing was had and defendant entered his plea of not guilty. September 15, 1952, the opening day of the term of court in Bernalillo County, the second court-appointed counsel was relieved of his appointment on the basis of complete disagreement between attorney and client as to the preparation of the defense; and on that date Edward J. Apodaca, a member of the bar, was appointed to defend appellant.

In order to understand the points relied upon by appellant in this Court, it is necessary to detail some of the events leading up to trial; many of them appear in the record only through the contents of certain motions filed by appellant. For the purpose of this appeal, we shall assume the following facts to be true: That at the call of the docket on September 15, 1952, request was made to the court by newly-appointed defense counsel that trial be set at the conclusion of the criminal calendar which probably would fall in November. Assent to this request was indicated by the court. Formal trial calendar was forwarded to defense counsel September 17, advising that the case was set for trial

October 6 and that the Honorable Waldo H. Rogers would preside. Counsel for appellant first consulted this calendar September 18 and discovered these facts. There followed on the first day of October, 1952, motion for a continuance to the end of the criminal term and, after hearing, the case was reset on October 9; at the same time, additional counsel, J. Albert Smith, was appointed to assist Mr. Apodaca. October 7, a sworn affidavit of disqualification addressed against the Honorable Waldo H. Rogers was filed and, on that day, this judge refused to honor the affidavit of disqualification; in this regard, attorneys for appellant offered no evidence. At the commencement of trial October 9, 1952, the motion for continuance and affidavit of disqualification were further pressed and denied; at the same time, district attorney announced that the state would not seek the death penalty.

In connection with Point IV, the trial judge has furnished this Court with a certificate as to the exact sequence of events surrounding the question of peremptory challenges and the facts related therein are the same as those furnished this Court by attorneys for appellant. They are in substance: Immediately after announcement by the state that the death penalty would not be sought, inquiry was made of the court by counsel for defendant as to the number of peremptory challenges available to defendant. The court advised that

defendant was entitled to five such challenges. This position, taken by the trial court, was accepted by all; there was no protest, exception or argument concerning the matter and it is apparent that all concerned proceeded with the impaneling of the jury satisfied with the fact that the law entitled this defendant to only five peremptory challenges. The five challenges were used, the jury impaneled and sworn and the case tried throughout October 9 and through the morning of October 10, at which time, the state rested its case. After lunch on the second day of trial, the alleged right of appellant to twelve peremptory challenges was first raised on a motion for mistrial which was overruled by the court. From this point on in the trial, this question was preserved at every step including a request by counsel for defendant for submission to the jury of a form of verdict which would permit the jury to sentence appellant to death.

There is not available to this Court a transcript of the evidence showing all of the testimony given by witnesses at trial. As a pauper, this defendant was represented by court-appointed counsel and, when appeal was granted, it was the decision of the trial court that such transcript, at the expense of the court fund, was not justified for the reason that no error relied upon by appellant's counsel was in any way dependent upon such transcript. As a preliminary to oral argument before this Court, counsel for appellant were questioned specifically in this regard and reaffirmed to this Court their belief that the absence of such transcript would in no way limit or detract from their effective presentation of all meritorious matters appealable to this Court on behalf of the defendant.

Further, after court-appointed counsel were relieved of their duties (subsequently reappointed for this appeal) and in response to a letter from the appellant to the trial judge concerning a record for appeal, the trial judge stated:

"If I had the slightest doubt of the lack of substantial evidence as to all the elements of first degree murder, I would most assuredly order the entire evidence to be transcribed."

In view of the clearly expressed opinion by the trial court and counsel for appellant concerning the evidence in this case, and without the benefit of a transcript of evidence, we feel justified in concluding that there is no question of fundamental error here involved. There is nothing to indicate the innocence of appellant or such violation of appellant's basic right to justice as would call for the application of that rule as set forth in State v. Garcia, 1942, 46 N.M. 302, 128 P.2d 459; Gonzales v. Rivera, 1933, 37 N.M. 562, 25 P.2d 802; and State v. Garcia, 1914, 19 N.M. 414, 143 P. 1012, 1014.

82

■■ With this in mind, the following disposition is made of the points raised by appellant: Point I is addressed to an abuse of discretion in the trial court's refusal of an additional continuance. In this regard, appellant must show both an abuse of discretion and that such abuse worked to the injury of appellant. A few of the cases applying this established rule are State v. Plummer, 1940, 44 N.M. 614, 107 P.2d 319; State v. Riddel, 1933, 37 N.M. 148, 19 P.2d 751; State v. Renner, 1929, 34 N.M. 154, 279 P. 66; Territory v. Lobato, 1913, 17 N.M. 666, 134 P. 222, L.R.A. 1917A, 1226. Appellant had counsel for a period of approximately three and one-half months; upon motion for continuance, three additional days and additional counsel were allowed; on this particular ruling, there was no exception taken or protest made raising the inadequacy of this extension; counsel who finally defended appellant had some twenty-five days available; there is no showing of actual injury to appellant. We conclude that there was no abuse of discretion by the trial court.

■ Point II is addressed to the trial court's refusal to honor affidavit of disqualification filed October 7, 1952, two days before trial. The pertinent disqualification statutes are Secs. 19–508 and 19–509, 1941 Comp. The latter section provides that:

"Such affidavit shall be filed not less than ten (10) days before the beginning of the term of court, if said case is at issue."

It is admitted that this case was at issue in July, 1952. The term began September 15, 1952. Without speculation as to whether or not the particular affidavit was motivated by proper reasons or for the purpose of delay, we shall not create exceptions to this rule. To do so would be a step backward in an important effort to eliminate dilatory tactics. In general support of this conclusion under the particular circumstances of this case, see Notargiacomo v. Hickman, 1951, 55 N.M. 465, 235 P.2d 531; and State ex rel. Prince v. Coors, 1946, 51 N.M. 42, 177 P.2d 536.

The only other basis for error in this connection is Art. 6, Sec. 18 of the Constitution. No grounds for such constitutional disqualification appear in the record and counsel for appellant did not choose to offer evidence to establish such grounds. The trial court did not err in refusing to honor the affidavit of disqualification.

Point III is addressed to alleged violations of those sections of the state and federal constitutions and statutes providing for the accused's right to assistance of counsel and due process of law. The argument on this point relates to the change in counsel and to their inexperience in criminal matters as it might affect adequate preparation and presentation of appellant's defense. On the latter score, inexperience,

counsel were members of the bar and as such their fitness for such responsibility cannot be questioned here. In all fairness, it must be stated that, from the statements of the trial court in the record and the conduct of the case in this Court, attorneys for appellant have not failed to carry that responsibility.

■ Further, we must find against appellant as to the alleged constitutional violations. Parts of the record which need not be quoted here reflect that a major portion of the responsibility for change of counsel falls upon appellant. An accused could forestall trial indefinitely if firing of counsel were an available method. While each case must stand on its own facts in this regard, there is no showing of injury to appellant, abuse of discretion on the part of the court, or other element of injustice, sufficient to sustain the contention of appellant. As stated by him in his brief, the litigated cases, depending on their particular facts, hold that any time from two days to two months may be adequate time.

■ Point IV is addressed to the so-called "denial" of twelve peremptory challenges to the jury panel. The relevant statutes are:

Sec. 41–2410, 1941 Comp.:

"Penalties for murder and manslaughter.—Every person convicted of murder in the first degree shall suffer death unless the jury trying said cause shall specify life imprisonment in the penitentiary in lieu of death; and in case the jury trying the cause shall specify life imprisonment, the judge shall sentence the person convicted to life imprisonment. Every person convicted of murder in the second degree shall be punished by imprisonment in the state penitentiary for any period of time not less than three (3) years; every person convicted of manslaughter shall be punished by imprisonment in the state penitentiary for a period of time not less than one (1) year nor more than ten (10) years. (Laws 1907, ch. 36, § 3; Code 1915, § 1461; C.S.1929, § 35–306; Laws 1939, ch. 49, § 1, p. 105.)"

Sec. 42–1003, 1941 Comp.:

"Peremptory challenges—Number of.—The state and the defendant in every indictment for a criminal offense shall be entitled to peremptory challenges of jurors as follows: First: If the offense charged be punishable with death, the defendant shall be allowed twelve (12) challenges and the state eight (8); second: In all cases not punishable with death, the defendant shall have five (5) challenges and the state three (3): Provided, that when two (2) or more persons are

jointly indicted and jointly tried, two (2) additional challenges shall be allowed to each side for each additional defendant. When two (2) or more defendants are jointly tried and can not agree upon whom the peremptory challenges shall be exercised, they shall exercise them alternately, the defendant whose name appears first in the indictment as a defendant exercising the first challenge. (Laws 1917, ch. 93, § 31, p. 263; C.S.1929, § 78-132.)"

The state admits, and there is no question, that the trial court was in error in its view that the act of the district attorney in announcing his decision not to seek the death penalty, reduced the available number of appellant's peremptory challenges from twelve to five. Kerley v. State, 1921, 89 Tex.Cr.R. 199, 230 S.W. 163; People v. Pers, 1935, 362 Ill. 298, 199 N.E. 812; Viley v. State, 1922, 92 Tex.Cr.R. 395, 244 S.W. 538; State v. Roberts, 1937, 91 Utah 117, 63 P.2d 584 in a special concurring opinion citing the New Mexico case of State v. Puckett, 1935, 39 N.M. 511, 50 P.2d 964.

■ There is equally no question that the right to trial by a fair and impartial jury is a fundamental right of the accused. There is a difference, however, between such a fundamental right and fundamental error. The latter cannot be waived and is always available to this Court on be-

half of the accused. But the theory of fundamental error, as stated earlier in this opinion, is bottomed upon the innocence of the accused or a corruption of actual justice. On the other hand, most rights, however fundamental, may be waived or lost by the accused; the right against self-incrimination is but one of many examples.

■ It is our judgment that accused's right to twelve peremptory challenges, though fundamental, could be and was lost by him. It will be remembered that in this case the court, the prosecution and the defense proceeded until the close of the prosecution's case, more than a day and one-half of trial, before any question was raised by appellant as to a "denial" of peremptory challenges.

■ After consulting many authorities, it is our conclusion that in order for appellant to preserve this error of the trial court timely objection or exception is required. Wharton's Criminal Procedure, Vol. III, 10th Ed., sec. 1552, p. 2011, concludes that under any view "the right (to peremptory challenge) ceases when the panel is complete and accepted." In Kerley v. State, supra [89 Tex.Cr.R. 199, 230 S.W. 164], the strongest case cited in support of the error made by the trial court, a reversal resulted from an objection *"timely and orderly"* made. In the case of State v. Squier, 1936, 56 Nev. 386, 54 P.2d 227, 232, a rape prosecution in which four in-

stead of eight peremptory challenges were allowed to the accused, the Court, without determining the correct number of challenges, had this to say:

"It is not necessary, however, in the opinion of my associates, that we decide how many peremptory challenges defendants were entitled to, for the reason, as they state, that no peremptory challenge was sought to be exercised to more than four jurors; that there is but one way for a person on trial to show that he is prejudiced in such a situation, which is to seek to exercise his right—to exhaust his remedy; that this was not done by the general statement of counsel and court * * *.

"The Court is not to be understood as deciding that the defendants in this case were entitled to 8 or to 4 peremptory challenges; but it does decide, for reasons above set forth, that defendants waived any right they may have had to more than 4 such challenges."

In State v. Collins, 1917, 53 Mont. 213, 163 P. 102, 103, the defendant was entitled to eight challenges and limited to six. The Court stated:

"It is true the caption of the bill of exceptions recites that counsel 're-quested the right of eight peremptory challenges, which request was denied';

but this does not show that when the time came for counsel to exercise the right of challenge he was limited or circumscribed in any way. To put the trial court in error it was incumbent upon counsel to have incorporated in the bill of exceptions the proceedings had, and by them to show that he offered to exercise one or both of the two additional challenges and was not permitted to do so. Otherwise we are left to conjecture as to what took place."

In a specially concurring opinion in State v. Roberts, supra [91 Utah 117, 63 P.2d 589], Justice Folland stated:

"However, this court is not required to pass on the question of the number of peremptory challenges to which defendant was entitled because by the record no prejudice is shown him. He did not attempt to exercise any additional challenges, and there is no intimation that he was not satisfied with the jury as impaneled. His counsel merely announced to the court, after exercising his fourth challenge, 'we have a right to ten challenges if we want them.' After some discussion and argument with respect to the punishment pronounced by law for rape, the court said: 'The jury may be sworn,' and counsel for defendant noted an exception. There is no inti-

mation here that defendant desired to or would have exercised any more challenges had the court ruled differently or that he did 'want them.' It was merely the abstract question of whether he had ten challenges if he wanted them that was put to the court without any intimation whatever that he wished to exercise any of them. Defendant was not obliged to exercise any of the challenges if he was satisfied with the jury as then made up. He had the right to waive any or all of his peremptory challenges."

To the same effect, see Lengyel v. Brandmiller, 1942, 139 Ohio St. 478, 40 N.E.2d 909; People v. Capola, 1941, 263 App.Div. 57, 31 N.Y.S. 590; the following New Mexico cases, on related subjects, tend to support this view: Territory v. Abeita, 1873, 1 N.M., Gild, 545; State v. Rodriguez, 1917, 23 N.M. 156, 167 P. 426, L.R.A. 1918A, 1016.

Nothing in the record before us indicates that the jury impaneled in this case was not a fair and impartial one. We can say here what the Court said in Pearce v. United States, 5 Cir., 1912, 192 F. 561, 562:

"The plaintiff in error complains that a preliminary ruling of the trial judge restricting the number of peremptory challenges to which he was entitled was erroneous; but he makes no complaint that any juror who tried him was unfair or partial, or that any particular juror who tried him was objectionable to him or would have been peremptorily challenged but for the ruling complained of. It follows that, if the ruling complained of was erroneous, it was harmless."

Finally, the case most strongly relied upon by appellant, People v. Diaz, 1951, 105 Cal.App.2d 690, 234 P.2d 300, differs from the case before this Court and, by its difference, emphasizes the controlling factor in the instant case. In the Diaz case, the number of peremptory challenges available was constantly in controversy during the impaneling of the jury. Further, the record disclosed that, in losing certain challenges to which the accused was entitled, he was forced to accept one juror who admitted that he had formed an opinion that the defendant was guilty, and another who had sat through the first two trials of the same case. A third juror admitted having an opinion as to the guilt but asserted no bias at the time of trial. The decision in the Diaz case distinguished the case of People v. Bugg, 1947, 79 Cal. App.2d 174, 179 P.2d 346, and in so doing summarizes the distinction in one sentence which expresses the controlling factor in the case before us:

"In short, there was no denial of the right of peremptory challenge." [105 Cal.App.2d 690, 234 P.2d 306.]

People v. Bugg, supra [79 Cal.App.2d 174, 179 P.2d 347], was a case in which accuseds were entitled to ten peremptory challenges. The court advised counsel that counsel had exhausted the available challenges which was in fact not true. The decision states:

"It appears that the court was mistaken in the statement that defendants had exhausted their peremptory challenges and that counsel joined in this mistake and failed to call the court's attention to the fact that defendants were entitled to additional peremptory challenges. .

"There is no intimation in the record that defendant desired to exercise an additional peremptory challenge or would have done so if the mistake of law had not been made. There is nothing to indicate that an objectionable juror had been forced on defendant or that he was dissatisfied with the jury as selected. Under such circumstances the error cannot be held to be prejudicial."

In the instant case as in People v. Bugg, supra, there was no "denial" of peremptory challenge and, even though the trial court was in error as a matter of law concerning the number of peremptory challenges available to appellant, that error was not properly preserved and therefore the contention of appellant must be denied.

Appellant's endeavor to make timely his untimely objection to the trial court's "denial" of peremptory challenges, by demanding submission to the jury of a form of verdict calling for the death sentence, must fail. It is true under Sec. 41–2410, 1941 Comp., the jury, not the judge or the district attorney, must determine the sentence; and the court was in error in taking this decision upon itself. Nevertheless, whatever error was committed here was harmless and could not be prejudicial to the accused; therefore, it is not available to him. Wiggs v. City of Albuquerque, 57 N.M. 770, 263 P.2d 963, and cases cited therein. If this Court reversed the trial court on such ground, it would in fact mean that the accused would be exposed to the death penalty in a retrial of this case.

The judgment of the trial court is affirmed.

It is so ordered.

McGHEE, C. J., and SADLER, COMPTON, and LUJAN, JJ., concur.