197 P.2d 228

## LEA COUNTY FAIR ASS'N v. ELKAN.

### No. 5075.

Supreme Court of New Mexico.

Sept. 3, 1948.

A. B. Carpenter, of Roswell, for appellant.

G. T. Hanners, of Lovington, for appellee.

PER CURIAM.

The original opinion in this case has been withdrawn and the following substituted therefor:

LUJAN, Justice.

The question is whether the district court erred in entering a decree providing that a permanent injunction should issue against the defendant (appellant) enjoining him from trespassing on certain described land.

We are met on the threshold of this case by questions of practice and procedure, which we will first dispose of.

█ The argument in the appellant's brief-in-chief is presented in eight divisions, each one preceded by a number followed by the word "point." However, no point was made in any instance as a basis for argument, as required by Section 14 of Supreme Court Rule 15. The rule contemplates that a proposition of law called a "point" shall be made as a basis for argument in presenting cases in this court. We stated in Robinson v. Mittry Bros., 43 N.M. 357, 94 P.2d 99, 101:

"The appellants have entirely ignored Sec. 14(5) of Supreme Court Rule XV, which required them to present points, or legal propositions as a basis for their arguments. The argument is in three divisions, none of which is preceded by a point or proposition of law as a basis for its support. * * *

"It is true that more than one error assigned may be presented under one point; but only in case they are all germane to

it, and a decision of the question presented will dispose of all of them. * * *

"What we have here is one continuous argument without a point or legal proposition as a basis, largely to the effect that there is no substantial evidence to support the verdict of the jury. For the convenience of this court and opposing counsel, the rule requiring the presentation of points or propositions of law as a basis for argument, should not be ignored." Brown v. Mitchell, 45 N.M. 71, 109 P.2d 788.

Under the first division, without point, we find the following:

"The court erred in refusing to adopt requested findings of fact submitted by defendant, Nos. 4, 5, 7, 8, 9, 10, 11, 12, 14 and 15."

This is the identical language of assignment of error No. 2.

We find the same defect in assignment of error No. 4, as follows:

"The court erred in adopting its findings of fact Nos. 2, 3, 10, 11, 12, 13, 14, 15, 16, 17 and 18."

We will not consider an assignment directed against all the findings of fact or conclusions of law made by the trial court, or the failure to adopt all of the findings requested. Such procedure is too general. United States v. Rio Grande Dam & Irrigation Co., 10 N.M. 617, 56 P. 276. Each error relied upon must be separately assigned (First Nat'l Bank v. Haverkampf, 16 N.M. 497, 121 P. 31; Kershner v. Trinidad Mill & Min. Co., 26 N.M. 73, 189 P. 658), and the findings, or requested findings, must be copied into the assignment, not referred to merely by number.

Aside from these defects, many of the requested findings are calls for findings of evidentiary facts. This is true of numbers 4, 5, 7, 8, 9 (requested findings 10 and 11 are not copied in the brief), 12 and 15 (so-called finding number 14 is a request for a conclusion of law). The trial court is required to make findings of ultimate facts only. Paulos v. Janetakos, 46 N.M. 390, 129 P.2d 636, 142 A.L.R. 1237, and Annotation p. 1243.

The trial court did not err in refusing to adopt these requests, and the findings made are not properly attacked.

We find the same defective briefing under the division marked "Point II." The third assignment of error is copied, as follows:

"The court erred in refusing to adopt conclusions of law 1, 2, 3, 4, 5 and 6 requested by the defendant."

Not one of these requested conclusions of law appears in the brief; aside from the fact that all six alleged errors are presented as one. We will not search the record for the purpose of determining just what conclusions of law were requested.

■ It is argued that the trial court's finding of fact No. 10 is "without any support or proof." That finding is not copied in the brief, and the substance of the evidence thereon is not set out as required by Sec. 6 of Supreme Court Rule 15. It is stated:

"We have heretofore set out the evidence and proof in support of defendant's requested finding of fact No. 4 to show that it was supported by competent proof and the court's own finding of fact No. 10 is without any support or proof."

The substance of all the evidence should have been set out as provided by the rule. We will not search the record to find it.

■ It is not sufficient to point to the evidence presented under another point. The objections to a finding, together with the substance of the evidence touching it, must be set out under the point in which it is attacked.

■ Findings of fact numbers 2, 11, 12, 13, 14, 15, 16, 17 and 18 are attacked by number. They are not set out in the brief. No evidence is substantially set out from which we can determine whether the objections to these findings are well taken, and we will not search the whole record for this information.

■ Division No. 6 seems to be based upon the following assignment of error:

"The court erred in its analysis and conclusions in arriving at its decision."

A memorandum of the trial court is not a part of the record on appeal, and this assignment of error will not be considered. Mosley v. Magnolia Petroleum Co., 45 N.M.. 230; 114 P.2d 740.

■ Assignment of error No. 1, argued under Point 7, is as follows:

"The court erred in overruling defendant's motion to dismiss both at the conclusion of plaintiff's case in chief, and at the close of the case."

We are of the opinion that there was evidence sufficient to support a decree against the defendant. The trial court did not err in overruling the motion to dismiss.

The facts necessary to a decision, as found by the trial court, are as follows:

"1. The plaintiff is the owner in fee simple of the SE¼ of Section 3, T. 16 S., R. 36 E., containing 160 acres, more or less, except a tract containing two acres which is now owned by the defendant, and which is hereinafter described.

"2. The plaintiff owns and maintains upon said quarter section a large livestock building, large livestock sales ring, corrals, and loading chute, all used for livestock purposes, and also three small buildings used for storage and juvenile recreational purposes; said livestock building is 56 feet

in width from north to south, and 145 feet in length from west to east, and the northeast corner of said livestock building is approximately 1120 feet south of the northern boundary line of said quarter section and approximately 505 feet east of the western boundary line of said quarter section; the three small buildings are located directly south of the west end of said livestock building, with approximately equal distances between each of said buildings and the south line of said livestock building; and the southwest corner of the southermost of the three small buildings is 220 feet south of the northwest corner of said livestock building, and approximately 360 feet east of the western boundary line of said quarter section.

"3. By an instrument in writing the plaintiff leased to the defendant, for use as an airport and landing field, the said quarter section of land except a portion thereof lying in the western and northwestern part of the quarter section. The exception is first mentioned in the lease as being of 'that portion of said lands now used for livestock purposes, as hereinafter provided,' but later in the lease the excepted portion is more definitely described as being the buildings and corrals of plaintiff 'now located near the northwest corner * * * together with all the land lying between the buildings and the north and west boundaries of said quarter section.'

"4. At the time the lease was made the lands of the plaintiff, in their then existing condition, had been designated as an approved airfield by the Civil Aeronautics Authority.

"5. The lease required the defendant to maintain, repair and improve the runways which then existed on the leased lands, and to erect an operational office approximately 200 yards north of the livestock building.

"6. The lease contract sued on by the plaintiff was framed, prepared and submitted by the plaintiff.

*   *   *   *   *   *

"12. In said airport lease permission was granted to the defendant to construct his hangar and operational office at a point approximately 200 yards due north of said livestock building within the eastern portion and along the eastern edge of the lands which had been excepted from the lease, and that although permission was given to him by said lease to construct his hangar and operational office at said point, the defendant has failed and refused to do so.

"13. Subsequent to the making of said airport lease and on or about June 13, 1946, the defendant learned that there was a two acre tract of land in the northwest portion of said quarter section which was not owned by the plaintiff; and that such two acre tract was located within the exterior limits of the larger tract which had

been excepted from said airport lease; and on or about June 13, 1946, the defendant acquired a quitclaim deed from the First Baptist Church covering said two acre tract, which is described as follows:

"Beginning at a point 1100 feet south of the northwest corner of said quarter section, thence east 300 feet; thence north 300 feet; thence west 300 feet; thence south 300 feet to the point of beginning, containing 2.06 acres.

"14. The defendant constructed upon such two acre tract an airplane hangar and operational office and airplane servicing equipment; and that the defendant scraped off and graded two airplane taxi-strips leading into said hangar and upon and across the lands which had been excepted from said airport lease as described in Finding No. 11 above and in Finding No. 18, post.

"15. The defendant has been operating and conducting his airplane business from the hangar upon his two acre tract, has been causing his airplanes to use the taxi-strips leading into said hangar and upon and across the excepted lands of the plaintiff, and has been causing said airplanes to taxi back and forth upon and across said excepted lands, and that all airplanes using the defendant's hangar and facilities, whether said planes belonged to the defendant or other persons, have been going upon and across the excepted lands of the plaintiff in getting to said hangar and in taxiing to and from said hangar.

*   *   *   *   *   *

"18. Measurements have been made and shown herein of the boundary lines of the excepted lands as above outlined in Finding No. 11, for more particular description, and it appears and is hereby found that in the airport lease entered into between the plaintiff and defendant on April 30, 1946, there was excepted from said lease all of the lands in the northwest portion of said quarter section which are described as follows: Beginning at the northeast corner of the livestock building, which point is approximately 1120 feet south of the northern boundary line of said quarter section and approximately 505 feet east of the western boundary line of said quarter section; thence north approximately 1120 feet to the northern boundary line of said quarter section; thence west along said boundary line to the northwest corner of said quarter section; thence south along the western boundary line of said quarter section approximately 1340 feet to a point directly west of the south side of the southernmost of the three small buildings; thence east 360 feet to the southwest corner of the southernmost of the three small buildings; thence north 220 feet to the northwest corner of the livestock building; thence east 145 feet to the point of beginning; and that there was also excepted from said airport lease the livestock corrals and the live-

stock building and three small buildings hereinabove described, and that the remainder of said quarter section (except the buildings and excepted lands as hereinabove described) was leased to the defendant for airport and aeronautical purposes."

The trial court concluded (some of its conclusions are intermingled with the facts) as follows:

That the lease description of the reserved lands is ambiguous and a literal interpretation would lead to absurd results. That a proper construction, in view of the evidence on the question of the ambiguous description of the reserved lands, shows it to be as described in finding No. 18.

"1. There was excepted from said airport lease all of that portion in the western part and the northwest corner of said quarter section which is indicated in the above Finding No. 11 and is more particularly described in the above Finding No. 18, and the defendant did not acquire by virtue of said lease any right to the use of any of said excepted lands, other than the permission granted to him by said lease to construct his hangar and operational office along the eastern edge of said excepted lands and at a point approximately 200 yards due north of said livestock building.

"2. The acts of the defendant in using said excepted lands constitute repeated and continuous trespass upon the same.

"3. The plaintiff is entitled to a permanent injunction against the defendant."

A perpetual injunction was granted against trespass on all the reserved land, as well as the two acre tract belonging to appellant. This might prevent the appellant from exercising his license or limited easement to erect his operational building as provided by the terms of the lease, and to use such portions of the reserved property as may be reasonably necessary to utilize the operational building in connection with the appellant's business, which the lease contract authorizes him to conduct on the premises, if and when he erects such building.

The injunction should be modified so as to exclude the two acre tract from its operation, and to permit the erection of the operational building at the place designated in the lease, if appellant so elects, and the use of that portion of the reserved land necessary for egress and ingress by motor propelled or horse drawn ground operated vehicles to said building if erected. The injunction is otherwise approved.

The cause is reversed and remanded with instructions to the district court to reform its decree as suggested herein.

BRICE, C. J., and SADLER and COMPTON, JJ., concur.

McGHEE, J., did not participate.