781 P.2d 293

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**Jerry ISIAH, Defendant–Appellant.**

No. 17789.

Supreme Court of New Mexico.

Oct. 18, 1989.

Hal Stratton, Atty. Gen., Margaret McLean, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

Jacquelyn Robins, Chief Public Defender, Sheila Lewis, Asst. Appellate Defender, Santa Fe, for defendant-appellant.

## OPINION

LARRABEE, Justice.

This is an appeal from a first-degree murder conviction, NMSA 1978, Section 30–2–1(A) (Repl.Pamp.1984), and attempted first-degree murder, NMSA 1978, Sections 30–2–1(A) and 30–28–1(A) (Repl.Pamp. 1984). Defendant-appellant, Jerry Isiah, pleaded not guilty by reason of insanity. Defendant had killed Jackie Saunders and injured Yadira Salinas while travelling through Lordsburg, New Mexico on a bus from Arizona to Texas. Following a jury trial defendant was found guilty but mentally ill on both counts. He was sentenced to imprisonment for life on count one and to a period of nine years followed by two years of parole on count two. The sentences were to run concurrently. We affirm.

On appeal defendant raises the following issues: (1) the prosecutor's direct comment on defendant's exercise of his right to remain silent constituted fundamental error; (2) the trial court abused its discretion by barring probing voir dire questions on the issue of race; (3) two prospective jurors who could not be impartial should have been excused for cause; (4) the trial court abused its discretion in failing to grant a directed verdict on the first degree murder and attempted first degree murder charges; (5) the jury instructions when taken as a whole injected an intolerable quantum of confusion into the case; and, in the conclusion of the brief in chief, defendant contends that the errors in the trial in the aggregate denied him a fair trial.

The first three issues and the one on cumulative error in the conclusion of defendant's brief in chief were not included in defendant's docketing statement and no motion to amend the docketing statement was filed. We stated recently in *Gallegos v. Citizens Insurance Agency*, 108 N.M. 722, 779 P.2d 99 (1989), "While the docketing statement required under SCRA 1986, 12–208 remains mandatory for perfecting appeals to this Court, it is not jurisdictional. It is within our discretion to consider error preserved below and presented in appellant's brief after having been omitted from the docketing statement." *Id.* 108 N.M. at 731, 779 P.2d at 108. We will review each of these issues.

1. *Comments on Defendant's Post–Arrest Silence*

Defendant claims that on three occasions during the trial, the prosecutor specifically asked police officers who were involved in or observed Isiah's arrest whether he made a statement at the time. Defendant maintains that these questions contravened his fifth amendment right to remain silent and constituted fundamental error.[1]

On the first occasion, the prosecutor asked Officer Darnell if defendant made any statements during the booking procedure. Defense counsel objected. An extensive bench conference followed and the objection was sustained. Thereafter, the prosecutor rephrased the question, "Is there anything else that you observed about his demeanor during the booking?"

Later, when Deputy Schneider was describing the arrest of defendant, the following colloquy took place:

Prosecutor: As you were observing him and before and during arrest, can you describe this individual's demeanor?

Deputy Schneider: Very controlled and normal.

Prosecution: Do you recall him saying anything to you at that time?

Deputy Schneider: No, he did not.

---

1. Defendant mischaracterized his claim in his brief as "plain error." The plain error doctrine, SCRA 1986, 11–103(D), pertains only to errors in evidentiary rulings of the trial court. *State v. Wall*, 94 N.M. 169, 171, 608 P.2d 145, 147 (1980).

The doctrine applicable to defendant's claim is fundamental error. *See State v. Escamilla*, 107 N.M. 510, 515, 760 P.2d 1276, 1281 (1988); *State v. Sanchez*, 58 N.M. 77, 84, 265 P.2d 684, 688 (1954).

Prosecution: Was he moving about? Standing still?

Deputy Schneider: He was walking when I first observed him, just in a normal pace toward me.

Defense counsel made no objection to these questions. During cross-examination, defense counsel inquired, "During this time, did the defendant say anything to you?" Schneider answered, "No, he did not."

The third instance occurred after Deputy Sheriff Kramer had fully described defendant's demeanor at the time of his arrest. The prosecutor asked, "Do you recall his saying anything at this time?" The witness responded, "No, sir." Again, defense counsel did not object and during cross-examination, he posed the question, "During that time, he didn't say anything to you, did he?" Deputy Kramer responded, "No, sir."

The State claims the inquiries into defendant's post-arrest silence did not directly implicate defendant's fifth amendment rights. The State posits that the purpose of these questions was to determine defendant's demeanor during the time of commission of the crimes and immediately thereafter; the state argues that his demeanor was highly probative of his mental condition, which was at issue because of his defenses of insanity, mental illness, and inability to form specific intent.

■ Improper comments on a defendant's fifth amendment right to remain silent violate the privilege against self-incrimination guaranteed by the fifth and fourteenth amendments. *Griffin v. California*, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965); *see State v. Molina*, 101 N.M. 146, 147, 679 P.2d 814, 815 (1984); *State v. Ramirez*, 98 N.M. 268, 269, 648 P.2d 307, 308 (1982); *State v. Lopez*, 105 N.M. 538, 545, 734 P.2d 778, 785 (Ct.App.), *cert. quashed*, 105 N.M. 521, 734 P.2d 761 (1985), *cert. denied*, 479 U.S. 1092, 107 S.Ct. 1305, 94 L.Ed.2d 160 (1986). The fifth amendment provides in part: "No person shall be held to answer for a capital, or otherwise infamous crime, ... nor shall he be compelled in any criminal case to be a witness against himself, ... without due process of law...." U.S. Const. amend. V; *see also* New Mexico Const. art. II, § 15. Upon arrest fifth amendment warnings, which include an individual's right to remain silent, must be given to the individual. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). The protection of the fifth amendment forbids a prosecutor to comment on an accused's silence, and a judge to give jury instructions that such silence is evidence of guilt. *Griffin*, 380 U.S. at 615, 85 S.Ct. at 1233. Not all improper remarks, however, are harmful or require automatic reversal. *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); *see United States v. Espinosa*, 771 F.2d 1382 (10th Cir.), *cert. denied, Foreman v. United States*, 474 U.S. 1023, 106 S.Ct. 579, 88 L.Ed.2d 561 (1985).

■ In *State v. Clark*, 108 N.M. 288, 772 P.2d 322 (1989), we adopted a test for evaluating allegedly improper prosecutorial comments on an accused's failure to testify. *Id.* at 302, 772 P.2d at 336. Because we see no difference in principle in the exercise by defendant of his constitutional right not to testify and his constitutional right to remain silent when taken into custody, we hold this test is applicable in both situations. To evaluate allegedly improper prosecutorial comments we must determine "whether the language used was manifestly intended to be or was of such a character that the jury would naturally and necessarily take it to be a comment" on the accused's invocation of his fifth amendment rights to remain silent after arrest. *See id.* We must also look to the context in which the statement was made to determine the manifest intention that prompted the remarks, as well as the natural and necessary impact upon the jury. *Id.* at 293, 772 P.2d at 337.

■ Although it is generally error for the prosecutor to elicit the fact of a defendant's post-arrest silence, under the circumstances of the present case, the first remarks, if error, were harmless beyond a reasonable doubt. The questions posed by

the prosecutor were intended to determine defendant's general demeanor and mental state at the time of the crimes. Because defendant's mental state and degree of culpability rather than his guilt were at issue, the jury would have taken these remarks within the context in which they were made. The fact that the trial court sustained the objection supports our conclusion that no harm or prejudice resulted. In addition, defendant never requested a curative instruction and the prosecutor rephrased the question. Based on these reasons, we believe that the prosecutor's remarks here were not such as to influence the jury to render a verdict on the grounds beyond the admissible evidence presented.

■ As to the second and third set of statements, the record reveals that not only were no objections made, but defendant's attorney elicited the same testimony on cross-examination. "Where the defendant fails to object and chooses instead to await the verdict, his silence is waiver of the improper comments by the prosecutor." *Id.* at 293, 772 P.2d at 337; *cf. State v. Sanchez,* 58 N.M. 77, 84, 265 P.2d 684, 688 (1954) (the right against self-incrimination is a fundamental right that may be waived or lost). The general rule bars review of issues not properly reserved at trial. *See State v. Tafoya,* 94 N.M. 762, 764, 617 P.2d 151, 153 (1980); *State v. Ruffino,* 94 N.M. 500, 502, 612 P.2d 1311, 1313 (1980). An exception to this general rule, however, applies in cases that involve fundamental error. *Clark,* 108 N.M. at 396, 772 P.2d at 330. The doctrine of fundamental error is always available to the court on behalf of the accused. *Sanchez,* 58 N.M. at 84, 265 P.2d at 688. "It should, however, be resorted to only under exceptional circumstances, 'if the innocence of the defendant appears indisputable, or if the question of his guilt is so doubtful that it would shock the conscience to permit the conviction to stand.'" *State v. Gomez,* 82 N.M. 333, 335, 481 P.2d 412, 414 (1971), (quoting *State v. Torres,* 78 N.M. 597, 435 P.2d 216 (Ct.App.1967).

We are not persuaded that these comments rise to the level of fundamental error. The remarks were not motivated by the prosecutor's intention to comment on defendant's right against self-incrimination, but were made to elicit information concerning the defendant's mental state. Our conclusion is further bolstered by defendant's cross-examination of the officers eliciting the same testimony. Because evidence presented against defendant was substantial, we conclude there is no reasonable probability that the remarks were a significant factor in the jury's deliberation in relation to the rest of the evidence before them. The prejudicial or harmful effect of the inference the jury might have drawn from the comments is minimal with respect to the overwhelming evidence presented. Under the circumstances existing in this case, we do not believe that the prosecutor's comments rise to the level of fundamental error requiring reversal.

## 2. *Scope of Voir Dire*

■ Defendant argues the trial court abused its discretion by limiting the scope of voir dire on the issue of race. Included in this point is defendant's argument that venue should have been changed from Hidalgo to Grant County because of the nature of the crime. Defendant argues that he is a large black homeless person from out of state with no connection to the area other than the crime; and, as it is difficult to uncover covert racial prejudice in prospective jurors, the trial should have been moved to another location with a larger jury pool so as to provide more fair and impartial jurors. Although defendant did raise the issue of change of venue in his docketing statement, defendant has failed to include any authority for this argument. This court has long held that issues raised in appellate briefs without support by cited authority will not be reviewed by us on appeal. *Doe v. Lee,* 100 N.M. 764, 765, 676 P.2d 1329, 1330 (1984); *Lee County Fair Ass'n v. Elkan,* 52 N.M. 250, 197 P.2d 228 (1948).[2]

**2.** Additionally, the trial court possesses broad discretion in dealing with motions for change of

venue. Its decision on the issue will not be disturbed on appeal absent a showing of an

Defendant claims he was denied the right to a fair and impartial jury because the trial court did not permit him to voir dire jurors on racial attitudes before the State had the opportunity to prepare them for questions on race, and because he was denied the right to pose questions that would have elicited honest responses indicative of any racial prejudice. Defendant maintains that based on *Ham v. South Carolina,* 409 U.S. 524, 93 S.Ct. 848, 35 L.Ed.2d 46 (1974) and *Rosales–Lopez v. United States,* 451 U.S. 182, 101 S.Ct. 1629, 68 L.Ed.2d 22 (1981), he was denied the right of a meaningful and effective voir dire. We disagree.

It is unquestioned that a defendant has the constitutional right to a trial by a neutral and impartial jury. *Duncan v. Louisiana,* 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968). "Voir dire plays a critical function in assuring the criminal defendant that his Sixth Amendment right to an impartial jury will be honored." *Rosales–Lopez,* 451 U.S. at 188, 101 S.Ct. at 1634. Criminal convictions have been reversed when the limitations on voir dire have unreasonably infringed the exercise of this right. *E.g., Aldridge v. United States,* 283 U.S. 308, 51 S.Ct. 470, 75 L.Ed. 1054 (1931).

■ There are constitutional requirements with respect to questioning prospective jurors about racial or ethnic bias. *Rosales–Lopez,* 451 U.S. at 189, 101 S.Ct. at 1634–35. The "special circumstances" under which the Constitution requires questioning on racial bias exist when racial issues are " 'inextricably bound up with the conduct of the trial.' " *Id.* (quoting *Ristaino v. Ross,* 424 U.S. 589, 597, 96 S.Ct. 1017, 1021, 47 L.Ed.2d 258 (1976)). A fact pattern involving a confrontation between persons of different races or origins, however, does not create per se a need of constitutional dimensions to question the jury con-

cerning racial or ethnic prejudice. *Rosales–Lopez,* 451 U.S. at 189–90, 101 S.Ct. at 1634–35. "Only when there are more substantial indications of the likelihood of racial or ethnic prejudice affecting the jurors in a particular case does the trial court's denial of a defendant's request to examine the jurors' ability to deal impartially with this subject amount to an unconstitutional abuse of discretion." *Id.* at 190, 101 S.Ct. at 1635.

Thus, in *Ristaino,* the Court held that a black defendant convicted in state court of violent crimes committed against a white security guard was not constitutionally entitled to a question specifically directed to racial prejudice. Similarly, in *Rosales–Lopez,* the Court held that the trial court did not violate the constitutional rights of an individual of Mexican descent accused of conspiring to bring three illegal Mexican aliens into the United States by refusing to voir dire the prospective jurors as to any prejudice they might have had against persons of Mexican descent.

■ The Supreme Court utilized the opportunity in *Rosales–Lopez* to further refine the rules governing the voir dire of jurors on racial and ethnic prejudice. The Court, laying down a nonconstitutional requirement, held that even in cases not involving "special circumstances" trial judges should exercise their discretion in determining "if the external circumstances of the case indicate a reasonable possibility that racial or ethnic prejudice will influence the jury's evaluation of the evidence." *Id.* at 192–93, 101 S.Ct. at 1636. The trial court is vested with broad discretion to determine the scope of the prospective jurors' voir dire and whether to accede to a request to have those jurors questioned as to racial or ethnic prejudice. *Id.* at 190, 101 S.Ct. at 1635; *see also State v. Espinosa,* 107 N.M. 293, 296, 756 P.2d 573, 576

abuse of that discretion. *State v. Martin,* 101 N.M. 595, 607, 686 P.2d 937, 949 (1984). Defendant's motion for change of venue contained merely allegations of racial bias and prejudice without any evidentiary proof in support of his claim. Moreover, the record does not indicate that defendant submitted any proposed findings of fact, nor did the court enter its own findings.

In the absence of findings or requested findings, denial of a motion to change venue is not open for appellate review. *State v. Clark,* 104 N.M. 434, 440, 722 P.2d 685, 691 (Ct.App.), *cert. denied,* 104 N.M. 378, 721 P.2d 1309 (1986). Defendant has not properly preserved this issue for appeal.

(1988) (trial court did not abuse its discretion by prohibiting inquiry during voir dire into issues of pure law); *State v. Fransua,* 85 N.M. 173, 176, 510 P.2d 106, 109 (Ct. App.1973) (no abuse of discretion in limiting voir dire on questions of prejudice with regard to alcohol abuse).

The trial court in this case permitted general voir dire in groups of eighteen people. Following the general voir dire, each group of eighteen was divided into groups of six for more specific questioning by both the prosecution and defense in the areas of racial bias and mental illness. The prosecution asked, "Can you all affirm to me that the fact that [defendant] is a black man will play no part in your deliberations? Can you all say that?" Defense counsel posed the following specific questions about racial attitudes:

> Are any of you sports fans? Do you remember just recently here when Jimmy the Greek made the comment that Black people are good in sports, but they could never be managers or manager level. Would you agree or disagree with that? And at this time I guess we have Jesse Jackson running for President. Could you vote for Jesse Jackson? You could do that? So then, the fact that Jesse Jackson is Black is of no significance to you? How do you feel, sir, about America's foreign policy toward South Africa? Do you think we ought to apply sanctions against them because of apartheid? We shouldn't do that? Do you want to tell us why?

In ruling that defense counsel's questions about race were irrelevant and beyond the scope of the case, the court said,

> These six people have already said that the fact [defendant] is black is not going to have any effect on their decision. Now if you can find something to go into with that, that's fine. But I'm not going to sit here and listen to a discussion of whether Secretary of State Schultz is doing the right thing or not. I don't think that has anything to do with it.

Prior to the conclusion of the voir dire, each final jury member affirmed that the racial background of defendant would have no bearing on his/her deliberations in determining defendant's guilt or innocence.

Based on the standards set forth by the United States Supreme Court, we conclude that our first inquiry should be whether racial overtones or prejudices were so "inextricably bound up with the conduct" of defendant's trial that the court denied defendant a fair trial with an impartial jury. Although defendant and the victims are of different races, there were no "special circumstances" of constitutional dimension in this case. The incident was not characterized as a racial one. Bald assertions by defendant of racial tension or prejudice in Lordsburg, New Mexico is not enough to require that specific questions designed to discover racial prejudice are to be asked of prospective jurors. A defendant is entitled to such questions when circumstances show he is a special target of racial bias. Otherwise, there is the risk that these questions may be counterproductive, because "such questioning may activate latent racial bias in certain prospective jurors or may insult others, without uncovering evidence of bias in [persons] who refuse to acknowledge their prejudice." Annotation, *Racial or Ethnic Prejudice of Prospective Jurors as Proper Subject of Inquiry or Ground of Challenge on Voir Dire in State Criminal Cases,* 94 A.L.R.3d 15, 21 (1979). The circumstances of this case do not suggest a significant likelihood that racial prejudice might have infected the trial.

Absent such "special circumstances," the court must then determine whether the trial court's refusal to allow the specific questions constituted an abuse of discretion because the factual underpinnings of the case indicated a "reasonable possibility" that racial prejudice might have influenced the jury. *Rosales–Lopez,* 451 U.S. at 192, 101 S.Ct. at 1636. A court need not approve every question defendant desires to ask on voir dire. The questions asked by the prosecution were sufficient to probe racial bias and it was not error for the trial court to disallow defendant's specific questions. The scope of voir dire rests within the discretion of the trial court and is governed

by the need for such inquiry as is disclosed by a factual analysis of a particular case. Something more than the mere fact that an accused is of a different race than the victims or prospective jurors must be present in order for a judge's refusal to permit defendant's questions on racial prejudice to be denominated as an abuse of discretion. *See Rosales–Lopez,* 451 U.S. at 188–90, 101 S.Ct. at 1634–35; *Ristaino,* 424 U.S. at 594–95, 96 S.Ct. at 1020–21. Defendant's race by itself did not create a "reasonable possibility" that racial prejudice would affect the jury so that denial of the defendant's requested voir dire questions was an abuse of discretion.

### 3. *Defendant's Right of Peremptory Challenges*

In point three, defendant asserts that the trial court improperly failed to dismiss the two jurors, Cataro and Adams, for cause. During the exercise of challenges, defense counsel challenged Cataro for cause; the court denied the request; defendant then used a peremptory challenge. Defendant argues that, even though a defendant is not entitled to claim prejudice in the court's failure to dismiss prospective jurors for bias when he has not used all of his twelve statutory challenges, *State v. Smith,* 92 N.M. 533, 540–41, 591 P.2d 664, 671–72 (1979), under the facts in the present case, the reasoning behind that requirement is not applicable. Defendant claims that, because the challenges were exercised after each group of eighteen prospective jurors had been examined, defendant never had sufficient information to use effectively his challenges. Defendant sets forth the following example to clarify his point: when defense counsel learned that the court would not strike Juror Cataro, he recognized he had to hoard his challenges and use them judiciously in case the remaining panel members proved to be unwilling to consider the defense of insanity. Defendant relies on *Fuson v. State,* 105 N.M. 632, 735 P.2d 1138 (1987) in support of his position, and asks this court to apply the *Fuson* holding to the facts herein. The panel from which jury members were selected were divided into groups of eighteen potential jurors. These eighteen were seated in the jury box. The remainder of the panel sat in the courtroom. Those seated in the box were questioned while the rest of the panel members listened without responding to the questions and answers. After a general voir dire of the eighteen potential jurors was completed, the entire panel was removed from the courtroom. Of the eighteen prospective jurors, six at a time were brought back to the courtroom for additional voir dire. After all eighteen had been examined completely, the parties exercised their challenges for cause and peremptory challenges. This process was repeated until the requisite number of jurors and alternates was selected.

Defendant raised as a defense not guilty by reason of insanity. During the voir dire defense counsel asked panel members if they felt that people should be relieved of the responsibility of their actions because of their mental state. The following exchange took place between Juror Cataro and counsel:

[Defense Counsel]: Miss Cataro, what's your feeling about a person who does something that they're unaware of?

Cataro: I have a problem dealing with someone who commits a criminal act and then have that person, or have the counselor come back and say, well, he committed it by reason of insanity.

[Defense Counsel]: You have a problem?

Cataro: I think that so often they do commit criminal acts and insanity shouldn't have anything to do with that.

[Defense Counsel]: But.

Cataro: I feel very strong about this.

[Defense Counsel]: Would that preclude you from coming back with a verdict of not guilty by reason of insanity?

Cataro: I would have to—They would have to prove [insanity] to me without a reasonable doubt.

[Defense Counsel]: So the burden then would be on the defense to prove to you that. Is that what you're saying?

Cataro: I think so.

[Defense Counsel]: It's the defense burden?

Cataro: [inaudible]

[Defense Counsel]: The judge is going to instruct you that it's the state's burden to prove [sanity] to you beyond a reasonable doubt. That's what the judge is going to instruct you. Can you follow that instruction, or are you going to have a hard time with that?

Cataro: Yes, I understand that.

[Defense Counsel]: Okay, but you are not precluded from coming back with a verdict if the evidence so shows, correct? Is there a particular reason.

Cataro: I think that so often that, now this is just an opinion.

[Defense Counsel]: Sure, I agree.

Cataro: Our judicial system, to me, in this day and age it seems that so often the criminal is let free for one reason or another and a lot of times it's because of the declaration of insanity. I don't know that he's insane, she's insane, whoever is. But I have a real hard time dealing with that because I think too often that they are let free to go out and commit crimes again and then they're back right in the judicial system, and here we go again.

[Defense Counsel]: So you think that society is kind of coddling the criminal these days?

Cataro: Sometimes.

[Defense Counsel]: Okay, Could you set aside that particular, it's obviously a prejudice, that's your personal opinion. That's how you feel about the judicial system. Everyone, of course, is entitled to their opinion, and I'm happy that you were forthright with us on what your opinion is. Is there a, can you put that aside and deal with this case, or is that prejudice going to be there?

Cataro: I don't know if I honestly can.

During the exercise of challenges, defendant challenged the juror for cause. The court denied the request and defendant used a peremptory challenge to strike the juror.

At another point in the voir dire, defense counsel questioned Juror Adams. The following took place:

[Defense Counsel]: How do you feel about that [mental illness]?

Adams: I've never been in contact with anybody who was mentally disturbed [inaudible]. I find it hard to believe that somebody could move from state to state, be lucid one minute and then the next minute not have any idea of what they are doing or the consequences entailed in their actions.

[Defense Counsel]: So, what you would consider mentally ill is somebody who was in psychosis seven days a week, 24 hours a day, 365 days a year?

Adams: I'm not an expert in mental illness, but I think that they would necessarily have to be in some sort of psychotic state 24 hours a day for them to be mentally ill. I just find it difficult to believe that somebody could move from one state to the next in rapid succession. Like I've said, I've never been in contact with it before so I really don't know.

[Defense Counsel]: So you would be willing to listen to the psychologists and see what they have to say?

Adams: I believe so.

[Defense Counsel] And if they were to tell you that that was the case, that people can move in and out of a psychotic episode just as you say from moment to moment, would you be able to believe that?

Adams: [no response]

[Defense Counsel]: Would you weigh that?

Adams: I think I would weigh that.

Again, defendant moved to challenge the juror for cause and the court refused. Although defendant had remaining at the time two peremptory challenges, he accepted this juror.

■ The right to a fair trial by an impartial jury is guaranteed in our federal and state constitution. U.S. Const. amend VI; New Mexico Const. art. II, §§ 14 & 18. An impartial jury is one in which each and every juror is "totally free from any partiality whatsoever." *State v. McFall*, 67 N.M. 260, 263, 354 P.2d 547, 548–49 (1960). "A prospective juror who cannot be impartial should be excused for cause." *Fuson*, 105 N.M. at 633, 735 P.2d at 1139. The

trial court has a great deal of discretion in dismissing a juror for cause and on appeal its decision will not be disturbed absent manifest error or clear abuse of discretion. *State v. Padilla*, 91 N.M. 451, 453, 575 P.2d 960, 962 (Ct.App.1978); *see State v. Sutphin*, 107 N.M. 126, 129, 753 P.2d 1314, 1317 (1988). In *Fuson*, we recognized that manifest error did occur and the juror should have been excused for cause. Under the circumstances therein, petitioner's right of peremptory challenge was impaired by the trial court's failure to excuse the potential juror for cause, because the names of some jurors were called after petitioner had exercised his final peremptory challenge. We held in that case prejudice is presumed where a party is compelled to use peremptory challenges on persons who should be excused for cause and that party exercises all of his or her peremptory challenges before the court completes the venire. *Fuson*, 105 N.M. at 634, 735 P.2d at 1140.

 Because defendant did not exercise all of his peremptory challenges, the holding in *Fuson* is inapplicable to the case at bar. We decline to accept defendant's invitation to extend *Fuson* to the facts in this case. The present case is more closely akin to *State v. Smith*, 92 N.M. 533, 591 P.2d 664 (1979). In *Smith*, defendant exercised only eight of his twelve statutory peremptory challenges. We held that, where a defendant fails to exercise available peremptory challenges, he cannot claim prejudice for failure to dismiss prospective jurors. *Id.* at 540, 591 P.2d at 671.

Although we believe it would have been better had the trial judge excused Juror Cataro for cause, under the facts herein the failure to do so is not reversible error. Not only did defendant have two peremptory challenges remaining, but Juror Cataro affirmed during the voir dire that she could follow the court's instructions and apply the law to the facts of the case. In addition, if defendant had wished to dismiss Juror Adams, he had one peremptory challenge available at the conclusion of the voir dire. Defendant chose to accept Adams. Accordingly, the trial court's denial of de-

fendant's challenge for cause of Adams was soundly within its discretion.

### 4. *Directed Verdict*

Next, defendant argues the trial court should have granted his motions for a directed verdict on the premeditated murder and attempted premeditated murder charges because the record is devoid of any evidence of a deliberate intention to kill. Defendant maintains that the State failed to prove the element of deliberation, and on the contrary, all of the evidence presented supports an inference that the defendant was impaired.

 The trial court denied defendant's motions for a directed verdict at the close of the state's case in chief and at the close of defendant's case. "In ruling on a motion for a directed verdict, the trial court must view the evidence in the light most favorable to the state at that particular point in the trial proceedings," *State v. Johnson*, 99 N.M. 682, 685, 662 P.2d 1349, 1352 (1983), "with all conflicts resolved and all permissible inferences indulged in [the state's] favor." *State v. Garcia*, 95 N.M. 260, 261, 620 P.2d 1285, 1286 (1980). Moreover, a verdict of not guilty should be directed only when there are no reasonable inferences or sufficient surrounding circumstances from which the requisite intent may be inferred. *State v. Robinson*, 94 N.M. 693, 696, 616 P.2d 406, 409 (1980). Where there is substantial evidence to support a conviction, a directed verdict is not proper. *Johnson*, 99 N.M. at 685, 662 P.2d at 1352. Substantial evidence is that evidence which is acceptable to a reasonable mind as adequate support for a conclusion. *Robinson*, 94 N.M. at 696, 616 P.2d at 409.

 The element of intent involves the state of mind of the defendant and is seldom, if ever, susceptible to direct proof; it may be proved, however, by circumstantial evidence. *Id.* A deliberate intention necessary to support a conviction of first degree murder is defined in our jury instructions as follows:

A deliberate intention refers to the state of mind of the defendant. A deliberate intention may be inferred from all of the

facts and circumstances of the killing. The word deliberate means arrived at or determined upon as a result of careful thought and the weighing of the consideration for and against the proposed course of action. A calculated judgment and decision may be arrived at in a short period of time. A mere unconsidered and rash impulse, even though it includes an intent to kill, is not a deliberate intention to kill. To constitute a deliberate killing, the slayer must weigh and consider the question of killing and his reasons for and against such a choice.

SCRA 1986, 14–201. We have also held that this requisite intent for first degree murder may be formed in a short period of time. *State v. Blea*, 101 N.M. 323, 326, 681 P.2d 1100, 1103 (1984); *State v. Lucero*, 88 N.M. 441, 443, 541 P.2d 430, 432 (1975).

■ Viewed in this context, the evidence supports the following conclusions and inferences. The defendant had the murder weapon, a knife, in his possession from Phoenix, Arizona to Lordsburg, New Mexico. As the bus on which he was a passenger approached Lordsburg, defendant took the knife out and placed it on his lap. The two stab wounds inflicted in each victim tended to show some deliberateness rather than random action by the defendant. And, testimony from two witnesses established that the defendant said, "I'm going to kill you" to the victims.

Under these circumstances, the issue of deliberate intent was a question for the jury. *Garcia*, 95 N.M. at 262, 620 P.2d at 1287; *State v. Aubrey*, 91 N.M. 1, 569 P.2d 411 (1977). No error resulted from the trial court's failure to grant defendant's motions for a directed verdict on the premeditated murder and attempted premeditated murder charges.

### 5. *Jury Instructions*

Defendant argues that the jury instructions when viewed as a whole were confusing and inconsistent. Defendant states that the "step-down instruction" did not offer any direction or insight into how or when the defense of insanity was to be considered; the jury verdict forms directed the jury first to find defendant guilty of the crime and then to find that he was insane; the court's instructions defined insanity by reference to a mental disease; the difference was not clarified between the mental disease of insanity and a finding of mental illness; and the instruction on intent was given before the elements of second degree murder were given and not given on the lesser included offense of aggravated battery. On this basis, defendant contends he is entitled to a new trial.

The trial court followed the Uniform Jury Instructions and refused only three of defendant's requested instructions. The trial court disallowed defendant's requested instructions on (1) the order in which to consider the degrees of murder, which modified Uniform Jury Instruction (UJI) 14–250, SCRA 1986, 14–250; (2) the defense of insanity, which modified UJI 14–5101, SCRA 1986, 14–5101; and (3) the defense of mental illness, which modified UJI 14–5103, SCRA 1986, 14–5103. In their place, the court gave these instructions: SCRA 1986, 14–2801 (attempt to commit second-degree murder); SCRA 1986, 14–250 (procedure for determining culpability for first and second-degree murder); SCRA 1986, 14–5101 (procedure for alternate verdict forms regarding the issue of a mental condition); and SCRA 1986, 14–5103 (definition of mentally ill).

■ The trial court must give the jury instructions promulgated by this court; noncompliance may be reversible error. *State v. Privett*, 104 N.M. 79, 81, 717 P.2d 55, 57 (1986); *State v. Chavez*, 101 N.M. 136, 139, 679 P.2d 804, 807 (1984). A trial judge has a duty to instruct the jury on all questions of law essential for a conviction of the crime with which the defendant is charged. *Jackson v. State*, 100 N.M. 487, 489, 672 P.2d 660, 662 (1983). There is no error, however, in refusing tendered instructions that incorrectly state the law applicable to the evidence, *State v. Johnson*, 103 N.M. 364, 374, 707 P.2d 1174, 1184 (Ct.App.), *cert. quashed*, 103 N.M. 344, 707 P.2d 552 (1985), or where the subject matter has been adequately covered by other instructions. *State v. Sparks*, 102 N.M. 317, 324, 694 P.2d 1382, 1389

(Ct.App.1985). Under the facts in the present case, the trial judge properly refused defendant's requested instructions. When viewed as a whole, the jury instructions given were correct on the degrees of the crimes, the order and manner in which to consider each count, and the applicable defenses of insanity, mental illness, and failure to form specific intent.

*State v. DeSantos*, 89 N.M. 458, 553 P.2d 1265 (1976), on which defendant relies for the proposition that the jury instructions were confusing and denied defendant a fair trial, is distinguishable from the case at bar. In *DeSantos*, the jury instructions given were inconsistent with the evidence presented during the trial, and thus, injected an intolerable quantum of confusion. *Id.* at 462–63, 553 P.2d 1265. The trial court in this case considered carefully all tendered jury instructions by both the defense and the prosecution, evaluated any objections to the instructions, and gave jury instructions consistent with the Uniform Jury Instructions mandated by this court and with the evidence presented during the trial.

### 6. *Cumulative Error*

■ The final point relied on for reversal is defendant's claim that the errors committed by the trial court, in their aggregate denied him his right of a fair trial. In New Mexico the doctrine of cumulative error is strictly applied. *State v. Martin*, 101 N.M. 595, 601, 686 P.2d 937, 943 (1984). Such error requires reversal when the cumulative impact of errors which occurred at trial was so prejudicial that the defendant was deprived of a fair trial. *Id.* Because defendant has not established any reversible error in the issues presented, it follows that there has been no accumulation of irregularities warranting a new trial. *See State v. Stephens*, 99 N.M. 32, 38, 653 P.2d 863, 869 (1982).

For the foregoing reasons, we affirm the trial court on all issues.

IT IS SO ORDERED.

BACA, J., and STEVE HERRERA, District Judge (sitting by designation), concur.